(No. 14327.—Reversed and remanded.)

THE BENTON COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MIKE PAZRO, Defendant in Error.)

*Opinion filed February 22, 1922.*

WORKMEN'S COMPENSATION—*when award for permanent total disability cannot be sustained.* While a finding by the Industrial Commission may be based upon a legitimate conclusion from the facts proved by competent evidence, yet an award for permanent total disability cannot be sustained if there is no competent evidence to support it.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. C. H. MILLER, Judge, presiding.

W. H. HART, and W. W. HART, for plaintiff in error.

W. P. SEEBER, and LAYMAN & JOHNSON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

An application for adjustment of claim was filed January 2, 1919, by Mike Pazro, thirty-four years old, alleging that on October 2, 1918, while he was "trapping" in plaintiff in error's mine, a coal car knocked a prop so that it fell upon him, injuring his back and hip, which affected him in walking and in bending over. The matter was heard before an arbitrator, and an award was entered May 13, 1919, in Pazro's favor. There being no appeal from the arbitrator's award it became the finding of the Industrial Commission under the statute. On August 28, 1919, Pazro filed a petition with the Industrial Commission alleging that his disability had increased and praying for additional compensation. Thereafter, on a hearing before the Industrial Commission on May 5, 1920, the commission entered an award allowing Pazro compensation at the rate of $15

per week for 266⅔ weeks, and thereafter a pension for life equal to eight per cent of $4000 annually, payable in monthly installments of $26.66, holding that the accidental injuries had resulted in permanent total disability. On review before the circuit court in June, 1921, that court affirmed the decision of the Industrial Commission and quashed the writ. From the order of the circuit court the proceeding has been brought here by writ of error for further review.

It was stipulated between the parties on the original hearing before the arbitrator that the parties were operating under and subject to the Workmen's Compensation act and that the injury arose out of and in the course of the employment; that plaintiff in error had notice of the accident within thirty days from the date of the injury and demand for compensation was made within the time required by law; that Pazro had two children under the age of sixteen and that he returned to work for plaintiff in error November 18, 1918.

On the hearing before the arbitrator, Dr. Buntin, a witness for plaintiff in error, examined the X-ray plates taken of Pazro's injury and testified that they showed no abnormalities, and that an examination of Pazro on the date of the hearing convinced him that the applicant had sustained no permanent injury; that there may have been a little rheumatic disorder, but that in his opinion the applicant thought he was in worse condition than he really was and for that reason avoided using the parts affected by the injury; that the applicant could do any kind of work, and it would be better for him, physically, if he did work.

The applicant testified on the hearing before the arbitrator that he had never had an injury before in his life and never had been under a doctor's care until he was injured by being hit by this prop; that at the time he testified he was sick and could not work; that his back was sore and weak when he bent down; that when he stood

straight it did not bother him; that he could load coal but could not pick it up; that his left hip hurt him; that when he walked or stood a good deal he was in pain; that he could not load coal for more than ten minutes before he had to straighten up, because he could not continue to bend down for a long time; that before he was hurt he loaded coal all the time; that the injury to his hip affected his walking and going up-stairs. He testified on cross-examination that he returned to work after the injury and worked all the time up to the hearing before the arbitrator; that he did not use a cane or crutch when he walked; that he felt pretty well during the day but not so well in the morning; that he had been treated by a St. Louis doctor, who told him that he would be all right in six months; that the X-ray pictures were taken in St. Louis; that at the time he testified he was working about three days a week.

When applicant applied for an increase because of the recurrence of the disability, by stipulation between the parties plaintiff in error agreed to advance $100 as temporary compensation, and applicant went to the medical director of the Industrial Commission for an examination. Thereafter, on January 26, 1920, the medical director, Dr. Magnuson, wrote a letter to the arbitrator, which was admitted in evidence by agreement of the parties as if he had so testified, in which he stated that Pazro had been under his observation and care from October 31, 1919, to the date of the letter; that he had entirely recovered so far as pain in his back was concerned when standing in an upright position but the ligaments of his back were still weak; that the writer had given the claimant positive instructions not to do any work which would involve stooping or lifting; that he would be able to return to light work, such as trapping, about February 15, and that not until six months from the time he returned to light work should he be asked or allowed to do anything in the way of lifting; that if he did any lifting before the ligaments were strong the conditions

which had laid him up to that time would recur and there would be another disability which would be more serious than the last; that in justice to both the man and the company it would seem that he ought to have the kind of work that would strengthen and not overtax the overstrained ligaments of his back. After this letter was admitted in evidence Pazro himself testified before the Industrial Commission, stating he had quit working for plaintiff in error on July 3, 1919, and had not worked since that time; that his back hurt and was sore; that he could not lift anything now; that he could just stoop down to his shoes but could not stoop down and raise anything; that he could not draw a bucket of water from the well; that he could not bend either side; that his side and back hurt him; that he could not lie down on one side nor on his back and could not sleep; that he was not as strong as when his case was first heard before the arbitrator; that some days his back was better than on other days. The evidence also tends to show that he suffered more than when he testified before the arbitrator; that he could not do any work at the time of the hearing before the Industrial Commission.

It is insisted by counsel for plaintiff in error that there is no competent evidence in the record that shows that the injury had recurred or increased since the original hearing before the arbitrator, and that there was no competent evidence before the Industrial Commission that he was permanently totally incapacitated for work. It is obvious from the testimony of the applicant taken before the, arbitrator and that taken on the hearing before the Industrial Commission on the petition asserting that the injury had recurred and increased, that the two descriptions of his injury were clearly different, and we think the letter of Dr. Magnuson describing his condition is very different as to the permanent nature of the injury from the testimony of Dr. Buntin on the hearing before the arbitrator. On the hearing before the Industrial Commission on the petition for

recurrence of the injury, applicant testified that he could not work or sleep, could not lie on his back or side and could not lift, whereas his testimony plainly showed that he could do light work at the time of the original hearing before the arbitrator. There is nothing in this record to indicate that the applicant is unworthy of belief or that his testimony should not be considered competent or that the Industrial Commission was not justified in accepting it as true. In our judgment there was ample evidence that the disability had increased. While the finding of the Industrial Commission must be based upon a legitimate conclusion from the facts proved by competent evidence, (*Carson-Payson Co.* v. *Industrial Com.* 285 Ill. 635,) if it is a legitimate inference it is not guessing or conjecture. *Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352; *Squire-Dingee Co.* v. *Industrial Board,* 281 id. 359.

A more serious question raised by the argument of counsel for plaintiff in error is, that there is no competent evidence in the record of the permanent total disability of the applicant. The testimony of Dr. Magnuson does not clearly indicate that there is a permanent disability but shows that there might be if applicant did not take care of himself or if he strained himself in doing improper work. There is nothing in the testimony of the applicant given on either hearing that seems to us to justify the conclusion that he is permanently totally disabled. There are different characters of disability as well as degrees of disability,—some in which the permanency of the disability is more apparent than in another case. If one has lost a hand or a foot that loss can clearly be accepted as permanent. If one is confined to bed from a complication of causes and results the permanency or temporary character of the disability may be less apparent than is the loss of the hand or foot. But a person may be no less permanently disabled because the permanent character of the in-

jury can only be determined from a full knowledge of the facts regarding the injury and possibly basing the reasoning upon objective and subjective tests or symptoms.   The injured person may be entirely unable to analyze his condition, and possibly, through ignorance or lack of knowledge of the English language, be unable to tell many of the symptoms accompanying his disability.   He may be able to tell whether he can lift without its hurting him, or whether he can lift as much at one time as at another, or whether he can sleep, or whether he is as strong as he was. In many cases it is difficult to tell whether a disability is permanent, and the victim of an accident may be correct in his judgment or he may be mistaken as to the character of the disability or whether he is permanently injured, and the physicians also may be mistaken as to the permanent character of the injury.   It is well known that instances are numerous where physicians disagree as to whether an injury is permanent or only temporary, and the Industrial Commission necessarily must act on the testimony before it in order to find whether an injury is temporary or permanent.   Beyond question, the evidence on which it bases its conclusion should not be a mere guess or based upon conjecture or surmise, but should be a legitimate conclusion from the competent evidence heard before it.   Under this rule the evidence does not support the finding that there was a permanent injury.

For that reason the judgment of the circuit court is reversed and the cause remanded to that court, with directions to set aside the finding of the Industrial Commission, and for such further proceedings as may be provided by statute.   *Reversed and remanded, with directions.*